UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

LEWIS CAMERON ANDREWS, JR.,

                    Plaintiff,

                                          13 Civ. 2217 (RWS)

    - against -

                                              OPINION

CAROLYN COLVIN,
Acting Commissioner of Social Security

                    Defendant.

------------------------------------------X

A P P E A R A N C E S:


    ATTORNEYS FOR PLAINTIFF

    IRWIN M. PORTNOY AND ASSOCIATES, P.C.
    542 Union Avenue
    New Windsor, NY 12553
    By:  Irwin M. Portnoy, Esq.


    ATTORNEYS FOR DEFENDANT

    PREET BHARARA
    United States Attorney for the
    Southern District of New York
    86 Chambers Street, Third Floor
    New York, NY 10007
    By:  Joseph A. Pantoja, Esq.

Plaintiff Lewis Cameron Andrews ("Andrews" or "Plaintiff") has moved pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the proceedings and review of an adverse decision of the defendant Carolyn Colvin ("Commissioner" or "Defendant"), Acting Commissioner of the Social Security Administration ("SSA"), denying disability benefits under the Social Security Act (the "Act"). The Commissioner has also cross-moved for judgment on the pleadings. Based on the conclusions set forth below, the Plaintiff's motion is granted to the extent it seeks remand for further proceedings in accordance with the conclusions set forth below.

## Procedural History

Plaintiff filed for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on November 30, 2007. Tr. 115-21.[1] Those claims were denied, and Plaintiff requested a hearing before an Administrative Law Judge. Tr. 56-68, 69-70. On August 18, 2011, Plaintiff appeared with counsel via video conference (the "Hearing") before Administrative Law Judge Robert Gonzalez (the "ALJ"). Tr. 25-40. On September 7, 2011, the

---

[1] All references to "Tr. ___" are to the numbered pages of the SSA Administrative Record. Dkt. No. 13 civ. 2217, ECF No. 9.

ALJ issued a decision (the "ALJ Decision") finding that Plaintiff was not disabled within the meaning of the Act because he had residual functional capacity ("RFC") to perform light work, including jobs that existed in significant numbers in the national economy.[2] Tr. 11-20. Plaintiff requested review of the ALJ Decision by the Appeal Council, which was denied on February 7, 2013. Tr. 1-5.

Plaintiff filed the Complaint in the in the instant action on May 3, 2013 (the "Complaint"). Plaintiff made the instant motion on January 30, 2014. The Commissioner cross-moved on March 3, 2014. The matter was marked fully submitted on April 16, 2014.

**Statement of Facts**

*Non-Medical Evidence and Hearing Testimony*

Plaintiff was born in 1979 and was 32 years old at the time of his hearing. Tr. 8. Plaintiff testified that he completed school through the twelfth grade and lived with his father, wife

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job is also in this category when it requires standing or walking, off and on, for a total of approximately six hours of an eight-hour workday, with intermittent sitting during the remaining time, and may be accomplished with occasional, rather than frequent, stooping, or when it involves sitting most of the time with some pushing and pulling of arm-hand or leg-foot controls. 20 C.F.R. §§ 404.1567(b), 416.967(b); Social Security Ruling ("SSR") 83-10.

and three-year old son on a 120 acre farm. Tr. 9, 30-31, 34.

Plaintiff has experienced back discomfort since middle school. His back issues became worse after he slipped and injured his back while hunting in 2008. Tr. 29. Plaintiff testified that he underwent micro-discectomy in June 2008 and lumbar fusion surgery in 2009. Tr. 29, 32-33. According to Plaintiff, his back symptoms have been "the same" or "a little worse" since undergoing the lumbar fusion, and his pain medication "helps out a bit" but made him "a little drowsy." *Id.* Plaintiff takes oxycodone, baclofen, Neurontin and morphine. Tr. 33. Plaintiff testified that he can sit and stand comfortably for twenty to thirty minutes at a time before needing to change positions, has been using a cane since 2007 for balance and stability, continues to experience pain and numbness that radiates into his legs and has trouble sleeping. Tr. 36-37.

At the Hearing, the ALJ asked Plaintiff about various notes in his medical records stating that he had continued to perform work on the farm. Tr. 31-32. According to Plaintiff, he does not perform work on the farm except when his father's rental property caught on fire in 2010; Plaintiff assisted in working on the house by giving instructions to people who his family had hired. Tr. 30-32.

4

*The Medical Evidence*

   *Dr. Sharon Rosenberg*

     Plaintiff was seen by Dr. Sharon Rosenberg after his hunting accident in May 2008. Tr. 294. A May 9, 2008 MRI of Plaintiff's lumbar spine showed mild degenerative disc disease at L2-L3, L4-L5, and L5-S1, minimal disk bulging at L2-L3, mild broad-based left paracentral disc protrusion at L4-L5, which contributes to left lateral recess stenosis, and moderate left-sided spondylotic neural foraminal narrowing at L5-S1, with no central canal stenosis and an overall normal bone marrow signal. Tr. 294, 384. Dr. Rosenberg referred Andrews to Dr. Chun Sian Chen, a neurosurgeon. Tr. 296-97.

   *Dr. Chun Siang Chen*

     On May 19, 2008, Dr. Chun Siang Chen examined Plaintiff for his low back pain with radiated pain to his left lower extremity down to his left calf. Dr. Chen diagnosed Plaintiff based on his May 9, 2008 MRI of left L4-5 and L5-S1 disc herniation, foramen stenosis and facet hypertrophy. Based on this diagnoses, Dr. Chen recommended surgery. Tr. 296-97. On June 18, 2008, Dr.

Chen performed a left L4-5 micro-discectomy, left medial facetectomy and left foraminotomy. Tr. 283-85. According to Dr. Chen's treatment notes, Plaintiff tolerated the surgery well, without any apparent complications. *Id.*

On July 3, 2008, Plaintiff was examined by Dr. Chen for a follow-up. At the time of the examination, Plaintiff "had excellent respon[se] to the surgical treatment" and "the preoperative pain had disappeared." Tr. 280. Dr. Chen also noted that "preoperative numbness had remarkable improvement" after the surgery. *Id.* Plaintiff was fully awake and oriented for the examination, could walk with the assistance of a cane, had normal sensory to touch, vibrations and segmental position, and had normal and symmetric muscles strength on all extremities. *Id.*

Dr. Chen followed-up with Plaintiff on August 11, 2008. Tr. 278. At the follow-up, Dr. Chen noted that Plaintiff had an excellent response to the surgical treatment and that the preoperative pain had disappeared. *Id.* In addition, Plaintiff's preoperative numbness had "remarkable improvement" and was not restricted to Andrew's left thigh. *Id.* Plaintiff reported that he had fallen and was kicked by a calf on the farm, which prolonged Plaintiff's recovery. *Id.* Plaintiff was able to walk normally without assistance of a cane, had normal sensory to touch,

vibration and segmental position, and had normal and symmetric muscle strength in all extremities. *Id.*

> *Dr. Mrilini Yeddu*

On October 3, 2008, Plaintiff was seen by Dr. Mrilini Yeddu for back pain. Tr. 216. Plaintiff reported that he felt much improved after back surgery, but still had some pain and had difficulty sleeping because of the pain. *Id.* Dr. Yeddu reported that Plaintiff appeared well nourished and well developed at this examination with no apparent distress. *Id.* Plaintiff's extremities and musculoskeletal structure were normal, with no skeletal tenderness or joint deformity, and the scar on Plaintiff's spine was well healed and without tenderness. *Id.* Dr. Yeddu prescribed Plaintiff Vicodin for his pain management.

> *Dr. H. Garcia*

On February 18, 2009, Plaintiff was examined by Dr. Garcia for weakness, instability and "difficulty walking distances." Tr. 236-41. Plaintiff reported to Dr. Garcia that he fell down a flight of stairs two weeks after his surgery. Tr. 237. Dr. Garcia indicated that this fall may be responsible for the poor surgical results. *Id.* In this examination, Plaintiff's lumbar

flexion was reduced to 20 out of 90, extension was less than 5 out of 25, lateral flexion on the right was 8 out of 25 and left lateral flexion was 5 out of 25. Tr. 239. Plaintiff had a positive straight leg raising test at 25 out of 90. *Id.* Plaintiff rated his pain as a six out of 10. Tr. 237. Dr. Garcia treated Plaintiff with an injection of Lidocaine and prescriptions of Vicodin and Cymbalta. Tr. 236.

Reports on Plaintiff's pain in March and April 2009 indicate that Plaintiff rated his pain during this time as a 10 out of 10. Tr. 234-35.

*Dr. Howard Yeon*

On March 12, 2009, Plaintiff was seen by Dr. Howard Yeon for Plaintiff's complaints of chronic back pain that radiated to his lower left extremity. Tr. 213-15. Upon examination of Plaintiff's lumbar spine, Plaintiff had mild tenderness to palpation over his paraspinal musculature bilaterally but forward bending did not reveal significant rotational prominence. Tr. 214. Plaintiff had congruent leg lengths, a gait with normal cadence, intact heel and toe walking and a well-balanced tandem gait. *Id.*

Plaintiff's Trendelenburg test,[3] straight leg raising test, crossed SLR test, bowstring test and Faber test[4] were all negative, and Plaintiff's reflexes, sensation and strength were all intact. *Id.* Plaintiff also had intact range of motion in both hips. *Id.* Dr. Yeon's examination of Plaintiff's post-operation MRI showed degenerative disc disease with significant postop findings, "scar [sic] and ? [sic] recurrent disk with moderate stenosis L4-L5." *Id.* Dr. Yeon assessed lumbar radiculopathy with low back pain after micro-discectomy and referred Plaintiff for physical therapy and pain management. Tr. 214-15.

### Dr. Sophia Lee

On the same date as his examination with Dr. Yeon, Plaintiff was seen by Dr. Sophia Lee with complaints of intermittent anxiety over the past year. Tr. 359-60. Dr. Lee assessed anxiety of unclear etiology, prescribed valium on a trial basis and recommended a psychiatry referral. Tr. 360.

### Dr. Steven Jacobs

---

[3] A test for problems in the function of the hip joint. http://www.ncbi.nlm.nih.gov/pubmed/4055873/.
[4] A test for problems in the function of the hip joint. http://www.ncbi.nlm.nih.gov/books/NBK27214/.

On March 27, 2009, Plaintiff was seen by Dr. Steven Jacobs of Crystal Run Healthcare. Tr. 263-65. At this visit, Plaintiff complained of chronic back pain after he was "pushed to the ground by [s]ecurity" at Mount Sinai that made it difficult to walk even with a cane. Tr. 263. He also reported left leg pain, which was far less in intensity than his back pain, and some numbness and tingling and denied any other musculoskeletal or neurological symptoms. *Id.* On examination, Plaintiff appeared healthy and well developed with no signs of distress, walked with a normal gait and station, and had a negative Romberg test. Tr. 264-65. Plaintiff's reflexes, sensation and strength were full and normal in his lower and upper extremities. *Id.* Dr. Jacobs reported that Plaintiff was unable to lift, pull, push, turn or twist. Tr. 263. Dr. Jacobs diagnosed Plaintiff with marked degenerative disk disease L4-L5 and L5-S1 with dense scar tissue on the left at L4-L5 and L5-S1. Tr. 265. Plaintiff was then scheduled for decompression and fusion surgery with bone and pedicle screws at L45 and L5-S1. *Id.*

*Dr. Mrilini Yeddu*

On March 31, 2009, Plaintiff returned to Dr. Yeddu for a preoperative evaluation, who observed that Plaintiff was in no apparent distress, well-nourished and well developed. Tr. 209. On

10

examination, Plaintiff's extremities were normal, and his spine showed no kyphosis or scoliosis. *Id.* However, Plaintiff had some tenderness in the lumbar spine along with moderate pain with motion. *Id.* Dr. Yeddu noted that Plaintiff was on Valium and Lyrica. Tr. 208.

*Dr. Steven Jacobs*

On April 9, 2009, Dr. Jacobs performed a lumbar decompression at the L4-5 and L5-S1 levels on Plaintiff. Tr. 268-69. Plaintiff tolerated the procedure well and was moving his lower extremities with good strength in the recovery room. Tr. 269. At a follow-up with Dr. Jacobs on April 21, 2009, Plaintiff was doing well post lumbar decompression, and his strength had improved and numbness lessened. Tr. 272. Upon examination, Plaintiff's reflexes, sensation and strength were all intact, and he walked with a normal gait and station. *Id.*

On June 26, 2009, Plaintiff had another follow-up with Dr. Jacobs, who found that Plaintiff was doing well, reporting markedly less back pain and reduced numbness. Tr. 274. Upon examination, Plaintiff's reflexes, sensation and strength were all intact, and he walked with a normal gait and station. *Id.* Dr. Jacobs scheduled Plaintiff to return for a follow up in four months

11

for possible physical therapy. Tr. 275.

   *Dr. Leena Philip*

   On June 30, 2009, Plaintiff underwent a consultative internal examination by Dr. Leena Philip at the request of the Commissioner. Tr. 202. Plaintiff did not appear to be in acute distress and reported that he was able to tend to his personal needs, including showering and dressing himself. Tr. 202-03. Plaintiff did report that he had difficulty cooking, cleaning, doing laundry and shopping due to his back pain. *Id.* On examination, Plaintiff's stance was normal, but his gait was slow, and he was unable to walk on his heels or toes or perform a squat. Tr. 203. He was able to rise from a chair without difficulty, but he used a cane and back brace for assistance with ambulating. *Id.* Plaintiff was unable to change for the exam and unable to get on and off the exam table. *Id.* Dr. Philip found Plaintiff's cervical and thoracic spine were normal, and his lumbar spine had full extension, decreased flexion, and limited rotation. Tr. 204. Straight leg raising testing could not be performed because Plaintiff was unable to lie flat. *Id.* He had full range of motion of the elbows, shoulders, forearms, ankles and wrists, and his strength in the upper and lower extremities was normal. *Id.* The joints were stable and non-tender, and there was no redness, heat,

12

swelling, effusion, trigger points or motor or sensory deficits. *Id.* Dr. Philip assessed that Plaintiff had moderate limitations in bending, as well as moderate limitations in squatting, lifting, carrying, pushing and pulling secondary to back pain. Tr. 204-05.

*S. Lute*

On August 21, 2009, Plaintiff's medical records were evaluated by "Single Decision Maker" S. Luke ("Lute"), who completed a Physical Residual Functional Capacity Assessment. Lute opined that Plaintiff could occasionally lift and/or carry up to 20 pounds, frequently lift and/or carry up to 10 pounds, stand and/or walk about six hours in an eight-hour work day, sit about six hours in an eight-hour work day, and push and/or pull without restriction, and that he had no limitation in his ability to manipulate items with his hands, including reaching in all directions and handling, fingering and feeling. Tr. 299-304. Lute also noted that Plaintiff's alleged pain level was not supported by his RFC and review of Plaintiff's medical examiner reports did not support the level of alleged impairment. Tr. 303. Lute concluded that Plaintiff's credibility was not fully supported. *Id.*

*Dr. Thomas Booker*

13

On October 16, 2009, Dr. Thomas Booker began seeing Plaintiff for pain management on Dr. Yeon's request. Tr. 353-55. Plaintiff informed Dr. Booker that the discectomy performed by Dr. Chen in 2008 did not help his back and leg pain and the fusion performed by Dr. Jacobs in April 2009 helped his pain only a little. Tr. 353. At the examination, Plaintiff complained of pain that starts in his low back and radiates into his left leg and foot. Tr. 353. Plaintiff rated the pain a nine to 10 out of 10. Tr. 353-54. Plaintiff's pain was exacerbated by walking, standing or sitting too long. Tr. 353. Plaintiff stated that he had tried physical therapy in the past, but his pain was not relieved by the treatments. Id. At the time of the examination, Plaintiff ambulated with a straight cane and used a brace for his lower back. Id. Dr. Booker noted that Plaintiff's pain interfered with his average daily life and that he was having difficulty with bathing and dressing. Id. With regards to Plaintiff's back, Dr. Booker found that Plaintiff had a decreased average range of motion with flexion, extension and lateral bending, marked pain with flexion, marked pain with extension and marked pain with lateral bending. Tr. 355. Dr. Booker prescribed to Plaintiff Baclofen and Neurontin and Lidoderm to the lower back.

On November 13, 2009, Plaintiff had a follow-up visit

14

with Dr. Booker. Tr. 350-52. During this visit, Plaintiff reported some pain relief with Baclofen and Neurontin, good relief from the combination with Percocet and being able to go for walks with a cane. Tr. 350. Despite the improvements, Plaintiff rated his pain a 10+ out of 10. *Id.* With regards to Plaintiff's back, Dr. Booker found that Plaintiff had a decreased average range of motion with flexion, extension and lateral bending, marked pain with flexion, marked pain with extension and marked pain with lateral bending. Tr. 351. Plaintiff had an antalgic gait but normal heel-toe progression and normal heel-walk and toe-walk. *Id.* Dr. Booker assessed lumbosacral radiculopathy that was sub-optimally controlled and prescribed Baclofen, Neurontin and Opana. Tr. 351.

X-rays of Plaintiff's lumbosacral spine were taken on November 13, 2009. Tr. 381. The scan showed spondylosis and loss of disc space height at the L5-S1 levels and anatomic alignment of the vertebrae. Tr. 381. Plaintiff's metallic hardware from his surgeries were intact. *Id.* The x-ray revealed endplate osteophyte formation with the metallic hardware. *Id.*

Plaintiff returned to Dr. Booker on November 20, 2009, and reported good relief from MS Contin and no side effects from his medications. Tr. 347. He appeared well nourished and developed and in no apparent distress, and his upper and lower extremities

were normal. Tr. 348. He had an antalgic gait and back pain with flexion, extension and lateral bending, but normal heel-toe progression and normal heel-walk and toe-walk. *Id.* Dr. Booker assessed lumbosacral radiculopathy that was sub-optimally controlled and prescribed Baclofen, Neurontin, Oxycodone, and MS Contin. Tr. 348. At a follow up with Dr. Booker on December 11, 2009, Plaintiff reported that he was "doing well with MS Contin and oxycodone" and that he had "less pain radiating into his legs." Tr. 344. Plaintiff rated his pain a five out of 10. Tr. 347. Dr. Booker made the same observations and physical findings as at the prior visit, assessed lumbosacral radiculopathy that was sub-optimally controlled, refilled Plaintiff's prescriptions, and asked Plaintiff to return in one month. Tr. 345-46.

Dr. Jacobs

Plaintiff was seen by Dr. Jacobs on December 14, 2009. Tr. 334. At this examination, Plaintiff complained of back pain and lower extremity numbness, stating that he felt "about the same" as at the last visit in June 2009. Tr. 334. Plaintiff's strength was full in all his extremities, hips, knees, ankles and feet, and he walked with a normal gait and station. Tr. 334-35. Dr. Jacobs noted that Plaintiff had not yet begun physical therapy, directed him to begin physical therapy and scheduled a follow-up appointment

16

in six to eight weeks. Tr. 335.

At a follow-up visit on January 5, 2010, Dr. Jacob noted
that Plaintiff had not yet begun physical therapy. Plaintiff's
symptoms and Dr. Jacob's findings was unchanged from Plaintiff's
December 14, 2009 examination by Dr. Jacob. Tr. 336-37. Dr. Jacob
also referred Plaintiff to Montgomery Physical Therapy for a
functional capacity evaluation. Tr. 337.

*Dr. Thomas Booker*

Plaintiff returned to Dr. Booker for a follow up on
February 10, 2010. Tr. 342-343. Plaintiff reported back and leg
pains that he rated at eight on a scale of one to 10, but explained
that he had been without medication for a week. Tr. 342. Plaintiff
explained that, "when he was taking his medications, he was getting
excellent relief of his back and leg pains" without any side
effects, and he was continuing to use a straight cane for
ambulation. *Id.* On examination, Plaintiff had normal heel-toe
progression, normal heel-toe walk, full strength in the lower
extremities and no trigger points in the lumbar spine. Tr. 343.
However, Plaintiff showed marked pain with back flexion, bending
and extension, and maintained an antalgic gait. *Id.* Dr. Booker
assessed lumbosacral radiculopathy that was sub-optimally

17

controlled, refilled Plaintiff's medication and stressed the importance of keeping his regular monthly follow ups for his prescription refills. *Id*.

At the follow up with Dr. Booker on March 10, 2010, Plaintiff reported that he was getting relief without side effects from his pain medication and continued to use a brace and cane for ambulation. Tr. 340. The physical findings on examination and assessment remained unchanged from the prior visit, and Dr. Booker refilled Plaintiff's prescriptions, and asked Plaintiff to return in one month. Tr. 341.

On May 5, 2010, Plaintiff went to another follow-up examination with Dr. Booker. At this examination, Plaintiff reported some relief with MS Contin and Norco, but that his pain increased with ambulation. Tr. 399. Plaintiff rated his pain as a seven out of 10. Tr. 399. The physical findings on examination and assessment remained unchanged from the prior visit, and Dr. Booker refilled Plaintiff's prescriptions and asked Plaintiff to return in one month. Tr. 400. At the follow-ups with Dr. Booker on June 9 and July 9, 2010, Plaintiff reported he was getting good relief without side effects from his medication, using a cane for ambulation and that his mood was good. Tr. 401, 403. The physical findings remained unchanged from the prior visit, and Dr. Booker

assessed lumbosacral radiculopathy that was sub-optimally controlled, refilled Plaintiff's prescriptions and asked Plaintiff to return in one month. Tr. 402, 404. At the July 9, 2010 visit, Plaintiff rated his pain a six out of 10. Tr. 403.

At the August 11, 2010 visit with Dr. Booker, Plaintiff complained that his back pain was more serious at this time because his rental house had burned down. Tr. 405. Plaintiff's physical examination findings were unchanged and Dr. Booker assessed lumbosacral radiculopathy that was sub-optimally controlled and refilled Plaintiff's prescriptions, except that that he increased the MS Contin prescription. Tr. 406. At the September 10, 2010 follow-up, Plaintiff reported that he had been having a rough month because "one of his houses burned down and he has been helping with cleanup." Tr. 407. Plaintiff's physical examination findings remained unchanged. Tr. 408. Plaintiff reported good results from the MS Contin and Oxycodone. Tr. 407. Dr. Booker assessed lumbosacral radiculopathy that was sub-optimally controlled, refilled Plaintiff's medication and asked him to return in one month. Tr. 408. At the follow-up on October 8, 2010, Plaintiff again stated that he had been working on his barn and the house that had burned down, which had been making his pain worse, and that he continued to take MS Contin and oxycodone with good results. Tr. 409. Dr. Booker assessed lumbosacral radiculopathy

19

that was sub-optimally controlled, refilled Plaintiff's medication and asked him to return in one month. Tr. 410. Plaintiff rated his pain as a six out of 10 and stated that his pain was worse when he stands or walks. Tr. 409.

On December 6, 2010, Plaintiff returned to Dr. Booker, for a reevaluation of his back pain, and complained of increasing pain due to the weather and an injury to his ribs that he sustained in the house. Tr. 412. Plaintiff rated his pain as a seven out of 10. *Id.* Plaintiff informed Dr. Booker that he had run out of his medication but attained relief with over-the-counter acetaminophen. *Id.* Dr. Booker assessed lumbosacral radiculopathy that was sub-optimally controlled. Tr. 415.

At the follow-up with Dr. Booker on December 29, 2010, Plaintiff reported that he "continue[d] to work on his house and barn at home" and that his pain was a six out of 10. Tr. 414. Plaintiff was still using a straight cane and back brace for ambulation. *Id.* He also reported that he continued to take MS Contin and oxycodone without side effects and his mood was good. *Id.* Dr. Booker assessed lumbosacral radiculopathy that was sub-optimally controlled and refilled Plaintiff's medication. Tr. 415.

On a follow-up with Dr. Booker on January 24, 2011 for

20

a refill of medication, Plaintiff reported that he was "mostly satisfied with pain relief on the current treatment regimen." Tr. 416. Dr. Booker noted that he recommended Plaintiff for "spinal cord stimulator" but that Plaintiff was "waiting for his work schedule to quiet down." *Id.*

Plaintiff made several follow-up visits to Dr. Booker or his staff on February 23, March 23, April 25, May 25, and July 11, 2011. During these visits, Plaintiff reported no side effects from his medication and that he was satisfied with the pain relief they provided, except that he complained of some increased pain on April 25, 2011, "due to the weather change." Tr. 421; *see also* Tr. 418 (2/23/11: "happy with his current level of relief"), 420 (3/23/11: "completely satisfied with pain relief on the current treatment regimen"), 421 (4/25/11: "doing well with oxycodone and methadone without side effects"); 423 (5/25/11: "mostly satisfied with pain relief on the current treatment regimen"); 428 (7/11/11: "experience relief by the pain meds"). Plaintiff rated his pain a seven out of 10 on February 23 and a five out of 10 on April 25, 2010. Tr. 418, 421. During this time period, Dr. Booker continued to assess lumbosacral radiculopathy that was sub-optimally controlled, refilled Plaintiff's medication and asked him to return on a monthly basis for prescription refills. Tr. 419, 422, 424. At the follow up with Dr. Booker's office on August 5, 2011,

21

Plaintiff had a normal gait and ambulated with a cane. Tr. 425. Plaintiff complained of increased pain with activity but continued to report relief with his medication *Id.*

## *The ALJ Decision*

The ALJ Decision made the following determinations based on the evidence in the record and the Hearing:

1.  Plaintiff met the insured status requirements of the Social Security Act through June 30, 2010.

2.  Plaintiff had not engaged in substantial gainful activity since November 30, 2007, the alleged onset date.

3.  Plaintiff had the following severe impairments: status post lumbar laminectomy and discectomy and lumbar fusion.

4.  Plaintiff did not have the impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.  Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). Plaintiff can occasionally engage in activities requiring stooping and crouching.

6.  Plaintiff is unable to perform any past relevant work.

7.  Plaintiff was born on August 17, 1979 and was 28 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8.  Plaintiff has at least a high school education and is able to communicate in English.

22

9.    Transferability of job skills is not an issue in this case because Plaintiff's past relevant work is unskilled.

10.   Considering Plaintiff's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

Tr. 14-20.


## The Applicable Standard


Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639 (2d Cir. 1988). A party's motion will be dismissed if, after a review of the pleadings, the court is convinced that the party does not set out factual allegations that are "enough to raise a right to relief beyond the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).


In reviewing a decision for disability insurance benefits, a court must determine whether (1) the Commissioner applied the correct legal standard, *see Tejada v. Apfel,* 167 F.3d 770, 773 (2d Cir. 1999); and (2) the decision is supported by

23

substantial evidence, *see* 42 U.S.C. § 405(g); *Brown v. Apfel,* 174 F.3d 59, 61-62 (2d Cir. 1999). Substantial evidence is "more than a mere scintilla," *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)), and is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Brown,* 174 F.3d at 62-63. "To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* at 62 (quoting *Mongeur v. Heckler,* 722 F.2d 1033, 1038 (2d Cir. 1983) (*per curiam*)). Substantial evidence "is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). Under this standard, once an ALJ finds facts, a court can reject those facts "only if a reasonable factfinder would *have to conclude otherwise*." *Id.* (quoting *Warren v. Shalala,* 29 F.3d 1287, 1290 (8th Cir. 1994) (emphasis in original).

A court reviewing a denial of Social Security benefits does not review *de novo* the evidence in the record. *Pratts v. Chater,* 94 F.3d 34, 37 (2d Cir. 1996); *Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir. 1991). "[I]t is up to the agency, and not this

court, to weigh the conflicting evidence in the record." *Clark v. Commissioner of Social Security,* 143 F.3d 115, 118 (2d Cir. 1998). In evaluating the evidence, "the court may not substitute its own judgment for that of the Secretary, even if it might justifiably have reached a different result upon *de novo* review." *Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir. 1991) (quoting *Valente v. Sec'y of Health & Human Servs.,* 733 F.2d 1037, 1041 (2d Cir. 1984)). If the Commissioner's decision that a claimant is not disabled is supported by substantial evidence in the record, the court must uphold the decision. 42 U.S.C. § 405(g); *Jones,* 949 F.2d at 59; *Arnone,* 882 F.2d at 34. The court must uphold a denial of benefits supported by substantial evidence even where substantial evidence may also support the plaintiff's position, *Alston v. Sullivan,* 904 F.2d 122, 126 (2d Cir. 1990), or where a reviewing court's independent conclusion based on the evidence may differ from the Commissioner's. *Rutherford v. Schweiker,* 685 F.2d 60, 62 (2d Cir. 1982), *cert denied,* 459 U.S. 1212 (1983); *Schauer v. Schweiker,* 675 F.2d 55, 57 (2d Cir. 1982). While the ALJ must set forth the essential considerations with sufficient specificity to enable the reviewing court to determine whether the decision is supported by substantial evidence, he or she need not "explicitly reconcile every conflicting shred of medical testimony." *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir. 1983) (citing *Miles v. Harris,* 645 F.2d 122, 124 (2d Cir. 1981)). A reviewing court gives deference

25

to the ALJ's evaluation since he or she observed the claimant's demeanor and heard the testimony first-hand. *Pena v. Chater,* 968 F, Supp. 930, 938 (S.D.N.Y.1997), *aff'd sub nom. Mejias v. Social Security Administration,* 445 F. Supp. 741, 744 (S. D.N.Y. 1978).

## Determination of Disability

### *Evaluation of Disability*

Under the Act, every individual who is considered to be "disabled" is entitled to disability insurance benefits. 42 U.S.C. § 423(a)(1). To be considered disabled under the Act, a claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A). The mere presence of an impairment is not sufficient to establish a disability. The claimant is considered disabled "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A), 42 U.S.C. § 1382c(a)(3)(B).

　　　　　To determine whether an individual is entitled to receive disability benefits, the Commissioner is required to conduct the following five-step inquiry: (1) determine whether the claimant is currently engaged in any substantial gainful activity; (2) if not, determine whether the claimant has a "severe impairment" that significantly limits his ability to do basic work activities; (3) if so, determine whether the impairment is listed in Appendix 1 of the regulations; if it is, the Commissioner will presume the claimant to be disabled; (4) if not, determine whether the claimant possesses the RFC to perform his past work despite the disability; and (5) if not, determine whether the claimant is capable of performing other work. 20 C.F.R. § 404.1520; *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *Gonzalez v. Apfel,* 61 F.Supp.2d 24, 29 (S.D.N.Y. 1999).

　　　　　A claimant bears the burden of proof for the first four steps of the sequential evaluation. *Melvill v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999); *Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995). At step five, the burden shifts to the Commissioner as to whether there is other work in the national economy which the claimant can perform. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

*The ALJ Did Not Have an Obligation to Perform a Function-By-*

*Function Analysis In Determining the Plaintiff's RFC*

Plaintiff contends that the ALJ erred in not providing a function-by-function analysis of Plaintiff's impairments when assessing his RFC. Under SSR 96-8p, an RFC assessment "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis .... Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." The Second Circuit has not specifically addressed this issue, but several courts in this District have found that the function-by-function assessment required by SSR 96-8p does not apply to the ALJ. *See Novak v. Astrue*, 07 CIV. 8435 (SAS), 2008 WL 2882638, at *13 (S.D.N.Y. July 25, 2008) (holding that the ALJ was not required to perform a function-by-function analysis); *Casino-Ortiz v. Astrue*, 06 CIV.0155 DAB JCF, 2007 WL 2745704, at *13 (S.D.N.Y. Sept. 21, 2007) *report and recommendation adopted*, 06 CIV. 155 DAB JCF, 2008 WL 461375 (S.D.N.Y. Feb. 20, 2008) ("[a]lthough a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce [ ] a detailed statement in writing." (quoting *Burrows v. Barnhart*, No. 3:03CV342, 2007 WL 708627, at *13 (D. Conn Feb. 20, 2007))). However, other courts have required the ALJ to perform a function-by-function assessment. *See Sava v. Astrue*, 06-CV-3386 KMK GAY, 2010 WL

3219311, *6 (S.D.N.Y. Aug. 12, 2010) ("In order to determine [RFC], 'the ALJ must make a function by function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop or crouch, based on medical reports from acceptable medical sources that include the sources' opinions as to the claimant's ability to perform each activity.'" (quoting *Brodbeck v. Astrue*, No. 05-CV-257, 2008 WL 681905, at *7 (N.D.N.Y. Mar. 7, 2008))). Other Circuits have agreed with the first line of cases and found that SSR 96-9p does not require an ALJ to perform a function-by-function assessment in writing. *See Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) ("Although a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing." (quoting *Bencivengo v. Comm'r of Soc. Sec.*, 251 F.3d 153 (table), No. 00-1995 (3d Cir. Dec. 19, 2000))).

Requiring written function-by-function assessment for every DIB decision made by the ALJ would place a great burden on the ALJ. Consequently, a function-by-function assessment on the ALJ's written decisions will not be imposed here, and the ALJ did not err in not conducting such a finding.

*The ALJ's Conclusion of the Plaintiff's RFC*
*Is Not Supported By Substantial Evidence*

The Commissioner must assess the claimant's RFC to apply the fourth and fifth steps of the eligibility-for-disability-benefits inquiry. *Petty v. Colvin*, 12 CIV. 1644 LTS RLE, 2014 WL 2465109, at *10 (S.D.N.Y. June 2, 2014); *see also Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010) ("An ALJ's obligation to obtain necessary medical records includes an obligation to obtain a proper assessment of the claimant's RFC."). A claimant's RFC represents the most that the claimant can do despite his impairments. 20 C.F.R. § 416.945(a). In assessing a claimant's RFC, the Commissioner must consider objective medical facts, diagnoses and medical opinions based on such facts, subjective evidence of claimant's symptoms, and claimant's age, education and work history. *Petty*, 2014 WL 2465109, at *10. A claimant's nonexertional limitations, including depression, nervousness and anxiety, must also be assessed. 20 C.F.R. §§ 404.1525(b), 404.1569a(c)(1)(i).

The ALJ assessed that Plaintiff has the RFC to perform "light work." This conclusion was based on a survey of Plaintiff's medical history, primarily Dr. Philip's assessment that Plaintiff had "moderate limitations to squatting, lifting and carrying, pushing and pulling secondary to back pain," Tr. 17, and the ALJ's own conclusions concerning Plaintiff's credibility, Tr. 14-18.

However, the ALJ's RFC conclusion is not supported by substantial evidence.

None of Plaintiff's treating physicians made any diagnoses or opinions regarding Plaintiff's ability to do sustained work activities in an ordinary setting on a regular and continuing basis.[5] Insofar as the ALJ Decision was based on Dr. Philip's assessment of Plaintiff's limitations, the ALJ erred in relying on the doctor's vague, non-specified notes regarding Plaintiff's ability to squat, lift, carry, push and pull. *See Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013); *Curry v. Apfel,* 209 F.3d 117, 123-24 (2d Cir. 2000), *superseded by statute on other grounds, as recognized in Douglass v. Astrue,* No. 11-3325-cv, 2012 WL 4094881, at *1 (2d Cir. Sept. 19, 2012) (summary order) (finding that a doctor's opinion that "plaintiff's impairment is: lifting and carrying moderate; standing and walking, pushing and pulling and sitting mild" was "so vague as to render it useless in evaluating whether [the plaintiff] [could] perform sedentary work"); *Hilsdorf*, 724 F. Supp. 2d at 347 ("To demonstrate that Plaintiff was capable of light to sedentary work, the ALJ points to Dr. Park's statement that Plaintiff had 'limitations of a mild degree of lifting, bending, walking, standing, and pushing and

---

[5] A regular and continuing basis is defined as 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p.

pulling on arm controls.' This vague statement cannot serve as an adequate basis for determining Plaintiff's RFC." (internal citation omitted)). In *Selian*, the ALJ concluded that the claimant was able to perform "light work," which requires the ability to lift 20 pounds occasionally and 10 pounds frequently, based on the conclusions of a psychiatrist and a doctor who opined that the claimant "should be able to lift ... objects of a mild degree of weight on an intermittent basis." 708 F.3d at 421. The Second Circuit found that these reports did not provide substantial evidence for the ALJ's conclusion, as the psychiatrist's report did not discuss claimant's ability to lift and the other doctor's report was "remarkably vague" in that "[w]hat [the doctor] mean[t] by 'mild degree' and 'intermittent' is left to the ALJ's sheer speculation." *Id.* Similarly, it is not clear as to what Dr. Philip meant with her "moderate limitations" assessment. Moreover, Dr. Philip's notes indicate that Plaintiff's lumbar spine had only 20 degrees of forward flexion out of 90. Tr. 204-05. Plaintiff also reported to her that he had difficulties cooking, cleaning, doing laundry and shopping secondary to his back pain. Dr. Philip did not opine about Plaintiff's ability to sit, bend, stoop or crouch or impairments in maintaining attention and concentration, *id.*, factors that are part of the "light work" definition in a claimant's RFC and the ALJ's own conclusion that "[Plaintiff] can occasionally engage in activities requiring stooping and

32

crouching." *See* 20 C.F.R. §§ 404.1567(b), 416.967(b). Dr. Philip's opinion does not provide substantial evidence to support the ALJ's findings that Plaintiff could lift 20 pounds occasionally and lift or carry 10 pounds frequently or to carry out "light work."

The Commissioner contends that the ALJ Decision was consistent with Lute's Physical Residual Functional Capacity Assessment, and that Lute was a "State agency medical consultant." However, Lute's report lists Lute as a "Single Decision Maker" and not a "Medical Consultant." Tr. 304. The assessment also does not include a medical consultant's code for Lute. *Id.* The assessment appears to be based on a review of Plaintiff's treating physician's notes, and there is no indication that Lute examined Plaintiff in person. *See* Tr. 302-03. Further, the ALJ Decision does not mention the Physical Residual Functional Capacity Assessment.

None of the cases cited by the Commissioner on this point are applicable here. In *Crews v. Astrue, 10 CIV. 5160 LTS FM*, 2012 WL 1107685 (S.D.N.Y. Mar. 27, 2012) *report and recommendation adopted*, 10 CIV. 5160 LTS FM, 2012 WL 2122344 (S.D.N.Y. June 12, 2012), the ALJ determined that claimant had the ability to perform light work after the claimant's treating physician opined that the claimant "had the capacity to perform at least some work, as long as it did not involve heavy lifting, bending, or twisting." *Id.* at

33

*17. The ALJ's determination was corroborated by two other doctor's opinions, as well as the claimant's own work as a bus monitor. *Id.* By contrast, only Dr. Philip's opinion has articulated any limits as to Plaintiff's capacity to perform work. Plaintiff has also not testified or admitted to doing any specific work that may classify as "light work." *Carpenter v. Astrue*, No. 09-CV-0079, 2010 WL 2541222 (W.D.N.Y. June 18, 2010), is similarly inapposite as the District Court in *Carpenter* rejected the plaintiff's contention that the ALJ erred in failing to consider her need for unscheduled work breaks and absences based on the lack of evidence from treating or examining sources. *Id.* at *4. Likewise, the claimant in *Roehm v. Comm'r of Soc. Sec.*, 5:11-CV-161 NAM/ATB, 2011 WL 6318364 (N.D.N.Y. Nov. 28, 2011) *report and recommendation adopted*, 5:11-CV-161, 2011 WL 6326105 (N.D.N.Y. Dec. 16, 2011), received an assessment on her ability to sit, stand and walk as well as lift and carry. *Id.* *5. Here, Plaintiff did not receive an assessment from Dr. Philip as to his ability to sit, stand and walk, and Dr. Philip explicitly noted that Plaintiff was unable to walk on his heels or toes or perform a squat. Tr. 17.

While the ALJ did survey Plaintiff's past medical history, the ALJ failed to take into account the consistent impairments assessed by his treating physicians. "A treating physician's opinion must be given controlling weight" when it is

well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record. *Sanders v. Comm'r of Soc. Sec.*, 506 F. App'x 74, 77 (2d Cir. 2012) (quotation marks omitted). If the treating physician's opinion is not given controlling weight, the Commissioner must nevertheless determine what weight to give it by considering: (1) the length, nature, and frequency of the relationship; (2) the evidence in support of the physician's opinion; (3) the consistency of the opinion with the record as a whole; (4) the specialization of the physician; and (5) any other relevant factors brought to the attention of the ALJ that support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2) (i-ii); *Schisler v. Sullivan*, 3 F.3d 563, 567–69 (2d Cir. 1993). Other physicians' opinions may be relied upon, even non-examining ones, but the same factors must be weighed as above. 20 C.F.R. § 416.927(e). "More weight must be given to a treating physician than a non-treating one and to an examining source as opposed to a non-examining source." *Petty v. Colvin*, 12 CIV. 1644 LTS RLE, 2014 WL 2465109, at *11 (S.D.N.Y. June 2, 2014); 20 C.F.R. §§ 404.1527(c)-(e), 416.927(c)-(e).

Plaintiff has ambulated with a cane and back brace since his first surgery in 2008. Plaintiff's treating physicians have also consistently found that Plaintiff has marked pain with back

35

flexion, bending and extension, and maintained an antalgic gait. Tr. 343, 351, 355. Dr. Booker found significant decrease in forward lumbar flexion on March 10, 2010 and in later examinations, which is corroborated by Dr. Philip's opinion that Plaintiff's forward flexion was restricted to 20 degrees out of 90 (or roughly 78% of his range of motion). Plaintiff's limited range of motion may have an effect on stooping, see SSR 85-15 (defining stooping as "bending the body downward and forward by bending the spine at the waist"), and any finding of "[a] complete inability to stoop would significantly erode the unskilled sedentary occupational base," SSR 96-9P. While the ALJ Decision did note that Plaintiff had "marked pain with back flexion, bending and extension," Tr. 18, the ALJ did not take into account either Drs. Booker's or Philip's assessments on Plaintiff's forward lumbar flexion. The ALJ's conclusion that "[Plaintiff] can occasionally engage in activities requiring stooping and crouching," Tr. 15, thus was not supported by substantial evidence. The ALJ did not give this medical evidence from Plaintiff's treating physicians the sufficient weight or weigh the relevant factors, such as the length, nature and frequency of the relationships, evidence in support of the opinions, and consistency of the opinions as a whole, to disregard the evidence.

If the ALJ had found the treating physicians' notes

lacking in sufficient information, and thus chose to rely solely on Dr. Philip's evaluation, the regulations at that time required an ALJ to "seek additional evidence or clarification from [the] medical source when a report from [that] medical source contains a conflict or ambiguity that must be resolved, [or] the report does not contain all the necessary information[.]" *See* 20 C.F.R. § 404.1512(e)(1), *amended*, How We Collect and Consider Evidence of Disability, 77 Fed Reg. 10,651, 10,656 (Feb. 23, 2012) (deleting former paragraph (e) and redesignating former paragraph (f) as paragraph (e), effective March 26, 2012); *see Lowry v. Astrue*, 474 F. App'x 801, 805 n.2 (2d Cir. 2012) (addressing the amendment and applying the version in effect when the ALJ adjudicated the claim); *Bialek v. Astrue*, 11-CV-5220 FB, 2013 WL 316165, at *2 n.2 (E.D.N.Y. Jan. 28, 2013) (same). Despite the lack of information from the treating physicians regarding Plaintiff's limitations, the ALJ did not seek additional evidence from them.[6] Thus, the ALJ was left with a record that was incomplete or he failed to take into account impairments assessed by Plaintiff's treating physicians in the ALJ Decision, and the ALJ's determination of that Plaintiff is able to perform "light work" is not backed by substantial evidence.

---

[6] Unlike the situation here, the ALJ in *Roehm v. Comm'r of Soc. Sec.*, 5:11-CV-161 NAM/ATB, 2011 WL 6318364 (N.D.N.Y. Nov. 28, 2011) *report and recommendation adopted*, 5:11-CV-161, 2011 WL 6326105 (N.D.N.Y. Dec. 16, 2011), sought to obtain further opinions of the claimant's RFC from her treating sources, but were unable to obtain them. *Id.* at *5.

Based on the above conclusions, the case must be remanded
for a redetermination of Plaintiff's RFC under the correct
standard.

## The ALJ Did Not Err in Its Assessment of Plaintiff's Credibility

Plaintiff contends that the ALJ erred in its analysis of
the Plaintiff's credibility with regards to his statements
regarding the intensity, persistence and limiting effects of his
symptoms. The ALJ Decision discounted much of Plaintiff's
testimony regarding his impairments due to the ALJ's determination
that Plaintiff lacked credibility.

"Evidence of pain is an important element in the
adjudication of DIB and SSI claims, and must be thoroughly
considered in calculating the RFC of a claimant." *Meadors v.
Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010). A two-step inquiry
is used to evaluate a claimant's contentions of pain. SSR 96-7P;
20 C.F.R. § 404.1529(c). First, the ALJ must determine whether
there is an underlying medically determinable physical or mental
impairment that could reasonably be expected to produce the
claimant's pain or other symptoms. 20 C.F.R. § 404.1529(c)(1).
Second, the ALJ must evaluate the intensity, persistence and

38

limiting effects of those symptoms considering all of the available evidence; to the extent that the pain contentions are not substantiated by objective medical evidence, the ALJ must engage in a credibility inquiry. See 20 C.F.R. § 404.1529(c)(3)(i)-(vii); Meadors, 370 F. App'x at 184.

The ALJ "has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment ... regarding the true extent of the pain alleged by a [plaintiff]." Martinez v. Astrue, 10 CIV. 9284 PKC, 2012 WL 4761541, at *11 (S.D.N.Y. Aug. 1, 2012) (quoting Mimms v. Heckler, 750 F.2d 180, 186 (2d Cir. 1984)). Its review of the issue is "not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of her pain are consistent with the objective medical and other evidence." Calzada v. Asture, 753 F. Supp. 2d 250, 280 (S.D.N.Y. 2010). If these findings are supported by substantial evidence, the ALJ's decision to discount plaintiff's subjective complaints of pain must be upheld. Martinez, 2012 WL 4761541, at *11 (citing Aponte v. Sec'y, Dep't of Health and Human Servs., 728 F.2d 588, 591 (2d Cir. 1984)).

The ALJ Decision found that Plaintiff suffered from

39

status post lumbar laminectomy and discectomy and lumbar fusion.
Tr. 14. The ALJ also found "that the [Plaintiff's] medically
determinable impairments could reasonably be expected to cause the
alleged symptoms; however, the [Plaintiff's] statements concerning
the intensity, persistence and limiting effects of these symptoms
[were] not credible to the extent they [were] inconsistent with
the [Plaintiff's] residual functional capacity assessment." Tr.
18. The ALJ did determine Plaintiff's underlying medically
determinable physical impairment, but evaluated that Plaintiff's
impairments were equal to Plaintiff's RFC Assessment based on his
conclusions on Plaintiff's credibility.

With regards to this credibility determination, the ALJ
properly found that Plaintiff's statements about his back pain
were not credible. Plaintiff repeatedly told Dr. Booker that he
was engaged in work on the farm and on the farm's rental property
that burned down. See, e.g., Tr. 407 ("one of his houses burned
down last month and he has been helping with cleanup"), 409 ("he
has been working on his barn and house, which has been making his
pain worse"), 414 ("he continues to work on his house and barn at
home"), 416 ("he is waiting for his work schedule to quiet down"),
278 ("a recent episode of fall and kick by a calf"). Plaintiff
also reported being able to shower and dress himself, watch
television and listen to the radio. Tr. 202-03. Plaintiff's own

statements to his treating physicians are inconsistent with the claimed intensity, persistence and limiting effects of his symptoms, and constitutes substantial evidence for the ALJ to doubt the reliability of Plaintiff's testimony regarding the extent of his pain and ability to perform daily activities.

Furthermore, Plaintiff testified that his back pain symptoms were "the same" or "a little worse" since undergoing a lumbar fusion in April 2009. Tr. 32. Nonetheless, Plaintiff reported significant improvement two weeks after his surgery to Dr. Jacobs, and additional improvement ten weeks after his surgery. Tr. 272, 274. Dr. Chen also reported that Plaintiff's "preoperative pain ha[d] disappeared," Tr. 278, and Dr. Yeddu reported that Plaintiff "felt much improved after back surgery," Tr. 216. While Plaintiff has generally rated his pain as a six or seven out of 10 from October 2009 until July 2011, with two ratings of five out of 10 in December 2009 and April 2010, Plaintiff maintained this rating despite reporting good relief from pain with his medications to Dr. Booker, including a rating of 10+ out of 10 on a day he reported substantial pain relief from his medications. Tr. 350-52. At around the same time, Plaintiff has consistently reported to Dr. Booker that he was pleased or very pleased with the pain relief associated with his medication. Tr. 335, 336, 340, 342, 344, 347, 350, 399, 407, 409, 412, 414, 418, 420, 421, 423, 425,

428; *but see* Tr. 353, 405.  The inconsistency between the numbered pain rating and reported pain relief is further evidence that belies Plaintiff's credibility.

Plaintiff contends that the manner and setting in which the ALJ questioned Plaintiff harmed him in that Plaintiff could not see Dr. Booker's treatment notes on Plaintiff's reference to working around the farm and rental property to which the ALJ referred to during Plaintiff's examination. Plaintiff's citation to *Koutrakos v. Astrue*, 906 F. Supp. 2d 30 (D. Conn. 2012), is not applicable here. *Koutrakos* involved the challenge of a vocational expert's testimony by telephone. *See id.* at 32. By contrast, Plaintiff gave his testimony by video conference. Moreover, the ALJ questioned Plaintiff about the work he did on the farm and on the burned down rental property, and Plaintiff provided a full response regarding such work. It does not appear that any confusion or prejudice occurred as a result of the videoconference.

Given the conclusions above, the ALJ's determination that Plaintiff's "statements concerning the intensity, persistence and limiting effects of those symptoms are not credible," Tr. 18, was reasonable and supported by substantial evidence. *See* *Martinez*, 2012 WL 4761541, at *14 (upholding ALJ's determination that plaintiff's statements about his back pain and depression

were not credible as it was supported by substantial evidence).

## The ALJ Did Not Err in Not Consulting a Vocational Expert

Plaintiff contends that the ALJ erred in failing to consult with a vocational expert and relying instead on the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "Grid"),[7] and in failing to determine the extent to which Plaintiff's nonexertional limitations[8] diminished his capacity to perform work. The ALJ is required to consult with a vocational expert only if a nonexertional impairment that significantly limits a claimant's range of work is present. *Zabala v. Astrue*, 595 F.3d 402, 411 (2d Cir. 2010). A nonexertional impairment significantly limits a claimant when it causes "additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Id.*

---

[7] "The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." *Zorilla v. Chater*, 915 F. Supp. 622, 667 n.2 (S.D.N.Y. 1996); *see* 20 C.F.R. § 404.1567.

[8] A nonexertional limitation is one that affects the "ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 404.1569a(c). "[A] nonexertional limitation is an impairment-caused limitation affecting such capacities as mental abilities, vision, hearing, speech, climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, and feeling." SSR 96-9p.

The ALJ found at step four that Plaintiff could not return to his prior relevant work as a landscaper. Proceeding to step five, the ALJ found, based on the Plaintiff's age, education, work history and RFC and applying the Grid, that Plaintiff could perform unskilled light work in the national economy and, therefore was not disabled. Tr. 18-20.

In his brief, Plaintiff refers to "an inability to lift or carry more than 2 or 3 pounds" and a "limitation to standing and walking for a total of only a few minutes during the work day." Pl. Mem. at 23. These generalized claims are not applicable to the Plaintiff and are not supported by the record. Plaintiff also referred to the use of hand-held assistive devices required by "significant neurological impairment involving both lower extremities." Id. Again, this generalized remark is inapposite here. As Plaintiff reported to Dr. Philip, Plaintiff ambulates using a cane in only one hand that "was prescribed by himself." Tr. 203. Dr. Booker also repeatedly found no neurological deficits on muscle weakness in the Plaintiff's lower extremities. Tr. 335, 341, 343, 345, 348, 351, 355, 362, 400.

Plaintiff has not specifically identified any nonexertional limitations ailing Plaintiff that the ALJ should

have considered. As such, the ALJ has not erred at this time in his decision to not consult a vocational expert. However, as previously noted, Plaintiff may have limitations in stooping. Upon remand, if any such impairments or other nonexertional limitations are found, a vocational expert may be useful for the ALJ's determination. SSR 96-9p ("Consultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping.").

## Conclusion

For the reasons stated above, Plaintiff's motion is granted, and this case is remanded to the ALJ for proceedings consistent with the conclusions set forth above.

It is so ordered.

New York, NY
July  /6  , 2014

_____
ROBERT W. SWEET
U.S.D.J.